Mr. Mears, good morning. It's been a few years since I've seen you in the courtroom. It has. Spanning any number of decades, I believe, and this is my first time in Omaha. Good morning. My name is Philip Mears. I'm an attorney from Iowa City. I have for many years had the distinction of being able to appear in front of the Eighth Circuit in most of those in the State of Iowa. This is another one of those cases involving William Martin and his efforts to obtain review of some of the parole procedures in the State of Iowa. I regard a oral argument to some extent a little bit like a human highlighter, where you sort of take all this paper that we've particularly important or we regard that are critical to your finding in our favor. A little bit about the slightly unusual procedural history in this case. Mr. Martin filed a pro se complaint with the Southern District of Iowa after he had been denied parole, even this is a parole granting case as opposed to a parole replication case, that prior to anything else, I was appointed to represent him. And before there was an opportunity to amend the complaint or anything, the state or the defendants filed a motion to dismiss, raising a whole bunch of different issues, including Mr. Martin's failure to exhaust his Board of Parole administrative remedies. That rather than try to redraft the complaint at that time, the parties agreed, and I might add that Judge Gritzner agreed as well, that we would first focus on the exhaustion problem. And that part of this was because there in fact had been a case involving a Frank Owens about four or five years ago, raising a somewhat similar issue. And that we thought that the exhaustion issue might in fact be dispositive. Not that it was correctly decided, but it might be dispositive in this particular case. That consequently we agreed to, we resisted the motion to dismiss on exhaustion grounds. That matter was referred to the magistrate for report and recommendation, much to our surprise. Counsel, that issue is brief, but there is a jurisdictional question raised in the government's brief, and that is that sovereign immunity bars any damage claim, and the injunction claim is moot. What's your response to that? I think the court, you mentioned a number of different things. First of all, as to mootness, I think that that was addressed on appeal because Mr. Martin discharged his sentence, and that... Yeah, and that's, there's an order, we've dismissed that, so why... The argument is it doesn't get off the ground because it's barred by sovereign immunity, and you didn't file a reply brief, understandably, so what's your response to that this morning? Well, I think the claim with regard to mootness and sovereign immunity was we addressed that in the response to that motion to dismiss on appeal. Yeah, well, address the 11th Amendment. As we say here today, the 11th Amendment prevents us from doing anything in this case, right? That I believe that nominal damages at least are available against individual members of the Board of Parole, that I... They're not parties, are they? Not if it's the state. I'm sorry? Not if it's the state. Are they sued in their individual capacity? We never were given an opportunity. That is, that Mr. Martin filed a pro se complaint, and we acknowledge that he did not name the right parties. That had the exhaustion question been properly addressed, in my opinion, the court would have said, you don't have to exhaust this claim, you may now continue with the case. At that point, we would have amended the complaint and addressed the proper parties. I clearly acknowledge that the complaint as presently drafted, that wouldn't survive. He hasn't named the right parties. Sure. But that we would have done that amended complaint had the exhaustion question have been addressed. I thought the magistrate judge denied the exhaustion defense in the district court and ruled on the merits and it proceeded to the district court. Correct. Well, if the magistrate judge reached the merits, then there was plenty of opportunity to assert whatever claims should have been asserted or needed to be asserted before the case reached the district court. And we filed objections to the report and recommendation, primarily pointing out that we had never been given an opportunity to address the merits. And in fact, Judge Gritzner acknowledged that his very order was going to allow us to proceed if we were successful. Well, counsel, if I understand what you're asking us for, you agree that as constituted at this moment, the 11th Amendment bars us from doing anything. And counsel, they bar even nominal damages. It bars any kind of damages, right? Yeah. And so that the case would have to be remanded. Correct. Well, not remanded. We rule in this case and the question is, can you refile another case individually against the parole officers, right? See, I think you're asking us for an advisory opinion whether you can file another case. That in this particular case, the case was dismissed for failure to exhaust. If that's incorrect, then the matter goes back to the district court, it seems to me, in order to allow the case to proceed as if it had proceeded two or three years ago, at which point the rest of the balance of the motion to dismiss is on the table. And that we would be permitted to amend the complaint at that point. I mean, this was all, there were plenty of grounds for the motion to dismiss, including that it was not properly filed and proper parties were not filed. I don't disagree with that. But the method that was chosen to present this procedurally to the court and agreed upon by Judge Gritzner was that we would first deal with the motion, the exhaustion question, and that if we survive the exhaustion, then we would be permitted to amend the complaint and address the proper- Do we have a final judgment then in the district court in your opinion? Oh, certainly. You have a dismissal. I mean, this case was clearly dismissed for failure to exhaust. And the only thing surviving at this appeal in light of this court's earlier order in this case is damages, right? Correct. Proceed. And damages, should Judge Gritzner be incorrect with regard to exhaustion? Counsel, you're very close to what the Supreme Court calls hypothetical appellate jurisdiction. And the Ninth Circuit has lost several cases trying hypothetical appellate jurisdiction, cases that look a little bit like this. And so just so you know, but that's just in terms of the appellate jurisdiction. But I'm not sure what other jurisdiction there's going to be following a dismissal for failure to exhaust. No, counsel, you are focusing on the district court to the exclusion of everything else. Right. We're looking at this as an appellate court. I understand that. And as an appellate court, the appeal has been dismissed for all injunctive and declaratory relief. The only thing left is damages. And we don't have any parties on appeal that we can give damages against. Because Mr. Martin wasn't permitted to amend his complaint yet. That, again, the point I was trying to make is that there is a final judgment. Because Mr. Martin was, the case was dismissed for failure to exhaust. If the court was incorrect in that, then the matter goes back to allow the case to proceed. In order to have the remaining portion of the motion to dismiss considered. And to give Mr. Martin an opportunity, which he should have had all along, to amend the complaint and trust the remaining parties. I think we have both said this several times now, so let me proceed. The other things I guess I would, I mean, obviously the district court relied extensively on the 1980, I'm sorry, the 2000 case of Castano. That for the proposition that this kind of a case complaining about parole procedures would in fact fail because of the exhaustion requirement of the PLRA would apply to that kind of case. In our opinion, Castano should not be determined to do this for several reasons. First of all, Castano interpreted the exhaustion language of the PLRA broadly. And that I might add that the definition that it relied on is the definition that came out of the portion of the PLRA dealing with appropriate remedies for prison conditions. That that particular definition- Are you arguing it's been overruled because it's controlling on us? I do not believe it's controlling because of Wilkinson and because of the Porter case. Clearly, Porter said- What's Wilkinson? Wilkinson was a case in the, about eight or nine years ago, that held that- The supposition in Castano is that all prisoner cases are divided into two kinds. There are prison complaints and there are habeas complaints. Wilkinson, that very specifically- Wilkinson versus Dotson, a Supreme Court decision from 2005- Has any court ever addressed your distinction between the parole process? That the parole process is somehow not prison officials and therefore is not what they do, what the parole commissioners do is not prison conditions. Has any appellate court addressed that in the standpoint of the exhaustion? You just actually changed your question. Your first question was, has any court addressed it? And then you said any appellate court addressed it. We did point out to the court that there have been three or four district court decisions in the last six years that have drawn that distinction. I might add post-Wilkinson, all of the cases cited by the defendant in this case were pre to, other than the Owen case. And again, Owen was not a published decision and Mr. Owen was representing himself pro se on appeal. I have no idea what kind of a brief he submitted. I can only guess. But that there have been district court cases that have recognized that distinction. And were they parole revocation or granting decisions? Yes, they were challenges to the parole process. Well now wait a minute, because an abstract challenge to the process, you're not giving anybody interviews, is different from you made a mistake in deciding my parole eligibility question. That's right. So which are these other cases I haven't read? The cases, there are four of them. They are cited in my brief. No, okay. They are challenges to the parole granting process. And that they may or may not have been brought. Well, I frankly don't see any difference in real terms between whether they're allowing proper high quality interpreters for what Castano says are institutional programs that bear on eligibility for parole. That was part of the holding in Castano. I don't see any difference between the quality of the interpreters and whether there's a personal interview in the process. Well, let's start out with where are the interpreters found. In Castano, the interpreters are found in the prison. Well, the facts of the case don't say that. Oh, I think so. I mean, that's what Mr. Castano was asking for. He was asking for interpreters in the prison. Well, if he had gotten, if he had had personal interviews, he would have had to have an interpreter there, right? But he wasn't complaining about the parole board in Castano. No, I don't know what he was complaining about. I just read our opinion. Programs that bear on eligibility for parole. That's right. But they're prison programs that bear on parole eligibility. The interpreters were found in the prison. Okay. So, but, you know, you're saying that Congress would somehow consider a parole board, depending on the way the state legislature constructed it, as independent or different or separate from the prison. I'm saying Congress intended to give prisons the first opportunity in a grievance process to address the complaint. Yes, including parole. In Mr. Castano's case. Including parole commissioners. In Mr. Castano's case, the parole board, I'm sorry, the prison officials were the ones in charge of either hiring or not hiring interpreters in the prison. Doesn't your entire argument turn on whether parole commissioners are prison officials? That's another way of looking at it. Counsel, better yet, are they government officials? The word in the statute is government official. Effective actions by government officials. Doesn't it turn on whether parole officers are government officials? So I don't think there's really any question about that. Wilkinson clearly allowed, Wilkinson doesn't address exhaustion, but it does address the availability of 1983 to present a complaint about parole procedures. And there's no question that these people can be sued under 1983. The question is whether this is a suit about prison conditions. Now, counsel, you keep reading the first section. You notice I keep reading the second. Prison conditions, and then there's an or, effects of actions by government officials on lives of persons. Well, that's the definition. I believe you're reading the definition. I most assuredly am reading the definition that keys this case. Yes, sir. Well, you're reading the definition that is the definition under section 32, I'm sorry, 3626, as opposed to the amendment of the PLRA for 1997E. And that Justice Ginsburg, in the Booth case, makes clear in her footnote that those are not necessarily, the Supreme Court has not completed those two. But they're both part of the PLRA. Our court has. In Pistano? Yes. That's binding on us. Pre-Booth, pre-Wilkins. They didn't overrule it. They didn't address it. They certainly, but Wilkins said- Take that to the court and bank. Wilkinson said that all prison cases can be divided into three, all prison 1983 cases can be divided into three types. So what? I mean, that's not the exhaustion problem. Well, but that does suggest, however, there is a kind of prisoner complaint that can be presented under 1983 that doesn't have anything to do with what happens in the prison. It has something to do with what happens down the block at the Board of Parole, an entirely different administrative proceeding, and it's not about prison conditions. If you were allowed to replete, why wouldn't race Judicata at this point? Bar Mr. Martin, because he has been fully through the state system, as I understand it. He's now exhausted. It was an entirely different parole year, for one thing. I thought it was both years that you complained about. He filed the suit, I think, in the spring of 2011, complaining about year 2010 and the previous eight years, that partially because the Attorney General's office filed the motion. It was a later year that he's now exhausted? Yes. Well, he not only exhausted, he went to court, pro se. I do thank you for your time on a relatively narrow issue. There can be still many things to say. I can only hope that as I get older, I keep having these sort of single issue cases, rather than ones involving many more times. Appreciate the opportunity. Thank you, Mr. Merritt. Mr. Lundquist. Thank you, Your Honors. It pleases the court, counsel. My name is John Lundquist. I'm from the Iowa Attorney General's office, and I'm here representing the defendants in this matter here today, the state of Iowa and the Iowa Board of Parole. If this court ultimately determines or gets past the jurisdictional question that was raised by the panel here, I think this case raises one simple question. Can members of a state board of parole have an effect on the lives of persons combined in a prison? And if the answer is yes, then William Martin's case that he brought under USC 42, section 1983, challenging those conditions is a civil action with respect to prison conditions for which the Prison Litigation Reform Act would bar him from going forward unless he's exhausted all available administrative remedies. Before you get too far down the road, counsel, you better address the Wilkinson case because really what your opponent is saying is the Wilkinson case says that several cases by our court are really wrong. Castano, Owens v. Robertson, even I think this court's earlier order in this case. Ignore for a second how we're bound and just address the real core of his argument. I believe that if you look at Wilkinson v. Dodson, as I recall, that that addressed the question as to whether or not a case had to be brought under the habeas statute 2254 or if it could be brought pursuant to section 1983. And the court ultimately ruled that as long as you weren't challenging the fact or duration of your confinement, that did not need to be brought under the habeas statute 2254. Wait, you said duration. Didn't you misspeak? Excuse me? Duration is a habeas issue. Yes, that's what I meant. I'm sorry, Your Honor, if that came out wrong. It's a fact or duration of confinement. Is that what the Supreme Court says? Is that their phrase? I'm not sure if that's their phrase. It's close to that. Now relate that to this case. Now in this case, what Mr. Martin is challenging is the procedures used by the parole board to determine whether or not this is an eligible candidate for release. And so I believe that Wilkinson v. Dodson reached the conclusion that you can challenge the procedures that a board uses. So am I getting my reviews in a timely fashion? Am I being interviewed? Those sorts of questions are eligible to be brought under Section 1983. But if ultimately the question is, should I be out on parole now? Or should I be out on parole yesterday? That would be a matter that should be brought in habeas. And I don't believe that's the argument that Mr. Martin is making in this case. You're not answering the question. When are you going to get to the question? Why doesn't Wilkinson v. Dodson overrule Castano and Owens? Because it doesn't have anything to do with the Prison Litigation Reform Act and what the meaning of a prison condition is. It has everything to do with the fact of can a case be brought under Section 1983 or can it be brought under the habeas statute? And it doesn't determine whether or not I can bring a case under the habeas statute. I still have to follow the prison condition. The obvious answer, every prison condition case that TLRA clearly applies to is in 1983, except the narrow range of disciplinary decisions that affect good time credits. So obviously when the Supreme Court said there are prison condition cases that can be brought under 1983, that has nothing to do with the question of exhaustion. Isn't that? That's correct. Yes, I would agree with that. Now to what extent is that in Wilkinson? Do you have a Wilkinson case here? I think all that's left of this case. Feel free to tell me I'm wrong, but as you know we've entered an order saying no injunctive relief, no declaratory relief, damages only. We don't have parties we can give damages on. This is about the whole ballgame here. So to address your question relating to the mootness factor in the motion to dismiss, and ultimately we did brief mootness again in our brief, that Martin's immediate discharge, as this court ruled, ruled out the question of injunctive relief and prospective declaratory relief. So you're stuck with the only thing he could possibly receive through this action is damages. And I think you have to look at this case in its current form to see who it is he's suing. He's suing the state of Iowa, he's suing the Board of Parole, and these are individuals that under the 11th Amendment, one probably can't be sued in federal court, and they sure can't be sued and have money damages. Is the 11th Amendment jurisdictional or is that the merits? I believe the 11th Amendment is jurisdictional, but that's a matter that the court needs to address. What Supreme Court case is that? This is trickier than it looks. Go ahead. I can't tell you if that was addressed in the Wills case out of Michigan or not. That was a case that talked about who were persons under Section 1983, and I know that in that particular circumstance, and I did raise that in my motion to dismiss that these are not persons within the meaning of the act. I know that the Seminole case addresses 11th Amendment immunity out of Florida there and talks about these things. And I would argue that that 11th Amendment immunity does go to the subject matter jurisdiction of this court. The way to look at it is if you brought that motion in the district court, would it be a 12B1 or a 12B6? 11th Amendment immunity, I believe, is 12B1 is what the precedent of this court is, as I recall. Clearly, the substance dealing with the PLRA, I believe, is a failure to state a claim that would fall under 12B6. But given the fact that there is no one to collect money damages from, I agree with Judge Benton that I believe he does need to refile, which leaves him in a tricky situation because more than two years have passed since the purported illegality occurred in this case, and so he'd be barred by the statute of limitations. Not to mention, I would argue that that judicial review finding in the Polk County District Court in Des Moines there does have preclusive effect as to whether or not his constitutional rights have somehow been injured in this matter, and that he did raise the exact question that the merits of his Section 1983 case are going to, is whether or not he's entitled to some sort of personal interviews as far as the parole process. And for the reasons cited in my brief, I would posit that he's not, that there simply is no basis for requiring that he be given a parole interview, especially given this court's ruling in the calendar matter that Iowa's parole statute doesn't create a liberty interest subject to due process protection. Getting back to the prison litigation. I gather his claim is based on Greenholz, and that somehow there is a mandatory liberty interest conferring statute. Is that wrong? Assuming, I happen to think Greenholz has been supplanted, but if it's still alive and well in that regard... Well, I think you take a look at both Greenholz and the Allen case from Montana, in which the Supreme Court at that time was focusing on the language that a parole statute used. Is it a mandatory term? Is it not? Iowa's statute is identical to Montana's, more or less. So it is mandatory? We use shall, yes. For every annual review? The way that the statute reads is that if, in the board's determination, more or less, if they believe that this person can lead a law-abiding life, then they shall release him. Well, does it say shall though in front of annual interview? There is no statute that gives an annual interview. How about a regulation of the board? The regulation provides that they will review him annually. It does not say that they will be interviewed annually. That the statute gives the board discretion to determine how it will go about conducting that annual review, and they do so on paper, after they've given the inmate an opportunity to submit whatever materials he wants, or she wants them to review. Can you tell me the language, this is critical if we're going to talk about it, that goes with the interview? Does it have a shall or a duty? Now I understand Judge Loken's point about the watering down of the shall. We used to read that talismanically. We don't anymore. But help me on what the words say. I bet you know those. I have it right here actually, I believe. In chapter 8 of the administrative code, it's 8.6. It says the board may review the records of an inmate committed to the custody. The Department of Corrections consider their prospect for parole or work release at any time. The board shall notify the inmate only if he's granted a parole or work release except provided. It talks about interviews here, the board may interview an inmate committed to the custody of the department at any time. So the interview phrase has the may in it, in the old talismanic days, right? In our administrative rules, the statute that purportedly created the liberty interest in the Montana statute talks about the board shall release on parole or work release any person who has the power to release when in its opinion there's a reasonable probability the person can be released. The statute changed about 1995. At that point in time, the board by statute was instructed to interview everyone yearly. After 1995, the statute instructed the parole board to create a method to systematically review each inmate. And then they shall establish by rule when they would interview people. And so today, their rule talks about the fact that they may do so at their discretion. Is annual interview not mentioned in the statute or rule at all? Annual interview is not. Annual review is. Okay, thank you. And so on that basis, given the Supreme Court's turn in Sandon to the question of what is an atypical and significant hardship on an inmate, this court ruled in calendar that removing someone from work release didn't implicate under Iowa law a protected liberty interest. How can leaving someone in prison, who'd never even been as far as the work release, somehow impose some sort of significant or hardship on them that's different or atypical from what any other prisoner would face? And I would say it can't. Getting back to the exhaustion question. Well on the exhaustion question, if I can just jump in here. If we find that exhaustion is not further required, should we reach the merits in this case? Or should we remand it back to the district court for analysis by the district court before we embark on that avenue? The fact of the matter is, if the 11th Amendment is applicable, you don't have jurisdiction to rule on the merits, period. The matter is, I believe that the merits have been fully briefed now in front of the district court as well as in front of this court. It would serve judicial economy or efficiency to have you rule. But given the weird or strange procedural posture that we're in here, I think fairness probably would dictate that you remand the matter back to the district court. So you weigh in favor of district court? Yes. But the question was asked if there is any appellate rulings on point on this question. And there is one. Now granted, it's a panel decision that's not reported from the 8th Circuit here in the Owens matter. But it's the exact same argument that was raised both before the district court and the court of appeals. Now granted, it's a one paragraph summary per curiam affirmance of the action that was taken in the district court. This is in the Owens v Robinson matter. But I think that the court tips its hat that it is in fact dismissing Owens based on PLRA exhaustion. Because it changed the dismissal from prejudice to without prejudice to give Mr. Owens an opportunity to refile. And so I think in this case as well that prison officials and parole officials are all government officials. Which is what the definition of prison or action in regards to prison conditions entails. I don't believe anything that the Supreme Court or any other court has done has drawn into question the legitimacy of Castano. That the cases cited by Mr. Mears to that regard talk about the fact that we're going to require exhaustion. With regards in the Porter case due to excessive force in prison. We're not going to require it if I'm bringing a case that dealt with something that happened prior to my imprisonment. The Wilkinson case as I talked about didn't discuss the Prison Litigation Reform Act at all. And it didn't talk about exhaustion. I don't believe it was an issue in that case. And therefore the court didn't need to bring that. But for the reasons cited in my brief, if the court has no further questions, I would ask that the district courts dismiss the order to be affirmed. Thank you. Thank you, Mr. Wonoglos. Mr. Mears, I'll give you a minute if you want to respond to anything that's come out here. I know we helped you use up your time before. Sometimes I'm not sure giving a minute is that helpful, given how many things. Real quick, Wilkinson. Wilkinson followed very nicely after Pricer and Edwards and that line of cases. Trying to draw distinctions between 1983 cases and habeas cases. The prior cases, and I'm quoting from Wilkinson, state prisoners were allowed to use habeas, or they couldn't bring it in 1983, if they were trying to invalidate the duration of their confinement. That what they decided in Wilkinson was there was a kind of 1983 case where you were complaining about the procedures that were used in determining the duration of your confinement, but did not necessarily imply the invalidity of their conviction, sentence, and therefore confinement. That was permitted, creating essentially, in my opinion, a third kind of prisoner complaint under 1983. That was not, as opposed to the earlier case from this court that had tried to divide things into two groups, habeas and 1983 case. On the merits, I think that the due process right that I am looking to try to establish comes from the parole granting statute and not from any annual review. Our position is that if due process applies, then you ought to be able to get an interview at a bare minimum. That is, that you can't simply give somebody... The whole thing about parole of due process applying is some kind of a here and now. We understand that. Again, I quote from the Castano case itself. Statutes should be given their ordinary, plain meaning. We are asking that the court recognize that Mr. Martin's complaint is not about prison conditions. Thank you for your time. Thank you, counsel. Mr. Meares, the court appreciates your help with appointing counsel. Issues are interesting. We'll take them under advisement.